UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JASON LAMONT BUCKLES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos.: 3:12-CR-89-TAV-HBG-1 |
| | ) | 3:14-CV-273-TAV |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM AND ORDER**

On June 18, 2014, Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docs. 19, 21].[1] The petition challenges his armed career criminal designation in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), a decision in which the Supreme Court invalidated the residual provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), for unconstitutional vagueness [Doc. 21 (suggesting that Petitioner's three prior aggravated burglary convictions no longer qualify as a predicate violent felonies)].

On July 21, 2016, the United States responded with the suggestion that Petitioner's entitlement to relief hinges on whether Tennessee aggravated burglary remains susceptible to categorization as a violent felony under the ACCA enumerated offense clause [Doc. 23]. Noting the Sixth Circuit has agreed to address that very issue *en banc* in *United States v. Stitt*, 646 F. App'x 454 (6th Cir. 2016), the United States requests that the Court defer resolution of

---

[1] On February 11, 2016, Federal Defender Services of Eastern Tennessee ("FDS") was appointed for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based upon *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDS filed a *Johnson*-based supplement to the original petition—which relied on *Descamps v. United States*, 133 S. Ct. 2276 (2013) [Doc. 21].

1

Petitioner's § 2255 motion pending the Sixth Circuit decision [*Id.*]. Petitioner did not reply to the United States's response and the time for doing so has now passed. E.D. Tenn. L.R. 7.1, 7.2.

This Court agrees that the clarifications regarding the categorical approach outlined in *Mathis v. United States*, 136 S. Ct. 2243 (2016), applies to post-conviction challenges raised prior to its issuance, *see* 136 S. Ct. at 2257 ("Our precedents make this a straightforward case."); *Chaidez v. United States*, 133 S. Ct. 103, 107 (2013) ("[W]hen we apply a settled rule . . . a person [may] avail herself of the decision on collateral review."); *Whorton v. Bocking*, 549 U.S. 406, 414–16 (2007) (explaining a decision that clarifies existing law "applies . . . on collateral review"), and, as a result, acknowledges that the decision could impact Petitioner's entitlement to collateral relief in light of *Johnson*.[2] It is unclear, however, whether the same should be read as overruling the Sixth Circuit holdings in *United States v. Nance*, 481 F.3d 882, 888 (6th Cir. 2007), or *United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015)—which held that Tennessee aggravated burglary categorically qualifies as a generic burglary under *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013), and *Taylor v. United States*, 495 U.S. 575, 599 (1990).[3]

---

[2] Unlike a new rule of law, the *Mathis* decision does not trigger a renewed one-year limitation period under 28 U.S.C. § 2255(f)(3). *See, e.g.*, *Figuereo-Sanchez v. United States*, 678 F.3d 1203, 1207 n. 4 (11th Cir. 2012) ("If the decision merely clarifies an old rule . . . then the decision applies [on collateral review]. However, under such circumstances the petitioner will not be able to take advantage of the extended statute of limitations.").

[3] The grant of rehearing *en banc* in *United States v. Stitt*, 646 F. App'x 454 (6th Cir. 2016), did nothing to alter the status of *Nance* and *Priddy* as binding precedent. *See, e.g.*, *United States v. Matos*, No. 3:13-cr-98, 2014 WL 1922866, at *3 (W.D. Ky. May 14, 2014) (explaining that a "district court is bound to follow the holding of a prior decision of the Court of Appeals for the circuit in which the district court is located until that binding precedent is expressly overruled." (citation omitted)); *accord D'Ambrosio v. Bagley*, 688 F. Supp. 2d 709, 721 (N.D. Ohio 2010) ("This is a district court, and it must follow binding precedent when such precedent exists.").

What, if any, impact *Mathis* has on the viability of *Nance* and *Priddy* is a question that the Sixth Circuit is likely answer in its impending *en banc* decision. To the extent that Petitioner invites this Court to preempt that decision with a determination of its own, it declines to do so. Instead, this Court holds only that: (1) differences between the Iowa burglary statute at issue in *Mathis* and the Tennessee aggravated burglary statute at issue in *Nance*, *Priddy*, and *Stitt* make it possible to distinguish the former from the latter; (2) that same possibility prevents this Court from saying that it is "powerfully convinced" that the Sixth Circuit will interpret *Mathis* as reversing its prior holdings in *Nance* and *Priddy*, meaning that this Court remains bound by those decisions; and (3) that such a reversal nonetheless remains a possibility makes issuance of a stay appropriate under the circumstances.

While it is true that this Court has an obligation to follow the Supreme Court where an intervening decision of that Court directly reverses an opinion of the Court of Appeals or implicitly reverses the same through a case with indistinguishable facts, *In re Higgins*, 159 B.R. 212, 215 (S.D. Ohio Aug. 13, 1993), such is not the case here. In cases like the instant one—where the intervening decision neither expressly nor implicitly overrules the prior Court of Appeals decision, a district court must "be extremely careful in concluding that circuit precedent is no longer good law," *Id.* at 216 (quoting *Rodriguez v. Bowen*, 678 F. Supp. 1456, 1462 (E.D. Cal. 1988), and should only deviate from such authority where it is "powerfully convinced that the circuit will overrule itself at the next available opportunity," *Beard v. Whitley Cnty. REMC*, 656 F. Supp. 1461, 1471 (N.D. Ind. 1987), *aff'd*, 840 F.2d 405 (7th Cir. 1988). Stated another way, "*sub silentio* overruling of a Court of Appeals decision by a Supreme Court case resting on different facts is a rare occurrence," and thus requires strong, objective evidence that the "higher

3

court would repudiate [its holding] if given a chance to do so." *In re Higgins*, 159 B.R. at 216 (quoting *Norris v. United States*, 687 F.2d 899, 904 (7th Cir. 1982)).

In *Mathis*, the Supreme Court held: (1) a prior conviction cannot qualify as a predicate offense under the enumerated-offense clause if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfying a single indivisible element; and (2) Iowa's burglary statute—which defined "structure" as "any building, structure, [or] land, water, or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value"—was incapable of supporting ACCA enhancement because the provision was both indivisible and overbroad. *Mathis*, 136 S. Ct. at 2251–52, 2256–57. [4] In reaching the first conclusion, the

---

[4] To determine whether a particular offense qualifies as a violent felony under § 924(e), courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. at 2285. They do so by employing a "categorical approach," under which courts look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If violation of the statute invariably involves the use, attempted use, or threatened use of violent force or falls within the generic definitions of burglary, arson, or extortion, then the conviction categorically qualifies as a violent felony and the courts' task is complete. It is only when the statute criminalizes conduct in excess of that covered by the use-of-physical-force and enumerated-offense clauses, that courts must determine whether the statute is divisible or indivisible. A divisible statute is one that comprises multiple, alternative versions of the crime. *Id.* at 2281. When faced with a divisible statute, courts resort to the "modified categorical approach," consulting "a limited class of documents, such as indictments and jury instructions, to determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *Id.* An indivisible statute is one that contains a single crime, set of elements. *Mathis*, 136 S. Ct. at 2249. Because the categorical approach is concerned with elements and not the "facts underlying [the] conviction," *Descamps*, 133 S. Ct. at 2285, it is important that courts distinguish between alterative elements—divisible provisions to which the modified categorical approach can be applied—and alternative means for satisfying a single element—indivisible provisions to which it cannot. *Mathis*, 136 S. Ct. at 2253–54. Convictions under an overly broad, indivisible provision are incapable of serving as predicate offenses under the ACCA. *Id.*

4

Supreme Court expressly overruled the Sixth Circuit's holding in *United States v. Ozier*, 796 F.3d 597 (6th Cir. 2015). *Id.* at 2251 n.1 (noting the existence of a circuit split about whether the modified categorical approach could be used to distinguish between differing factual means of satisfying a single statutory element, reversing Sixth Circuit's decision on the issue in *Ozier*).

To the extent Petitioner suggests that the Supreme Court's reversal of *Ozier* should be read as an implicit reversal of *Nance* and *Priddy*, it is far from clear that such is the case. Unlike *Ozier*—which held that Tennessee Code Annotated § 39-14-403 was divisible and only a handful of its variants qualified as violent felonies under the enumerated-offense clause, 796 F.3d at 601–02, *Nance* and *Priddy* make no reference to divisibility. To the contrary, *Nance* and *Priddy* operate under the opposite assumption—that Tennessee Code Annotated 39-14-401(1) is indivisible—before concluding that the entirety of that indivisible provision constitutes generic burglary. *Priddy*, 808 F.3d at 684; *Nance*, 481 F.3d at 887–88. As a result, a viable argument can be made that the *Mathis* decision merely confirmed a central underlying assumption in *Nance* and *Priddy*—that Tennessee Code Annotated § 39-14-403 is in fact indivisible.

To the extent Petitioner suggests that designating the Iowa burglary statute broader than generic burglary invariably compels the same conclusion with respect to the definition of "habitation" in Tennessee Code Annotated § 39-14-401(1), distinctions between the provisions make such a conclusion uncertain. Generic burglary includes any conviction, "having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599. This "uniform definition" was intended to

"approximate" the Model Penal Code and encompass "the criminal codes of most States," *Id.* at 598 n. 8. At the time the Supreme Court adopted the above definition, the Model Penal Code defined burglary as "enter[ing] a building or occupied structure, or separately secured or occupied portion thereof, with the purpose [of] commit[ing] a crime therein," Model Penal Code § 221.1 (1990), and defined "occupied structure" as "any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present," *Id.* at § 221.0.[5] The Iowa definition of "structure," which includes "any . . . land, water, or air vehicle . . . adapted . . . for the storage or safekeeping of anything of value," differs from the Tennessee definition of "habitation" in that the latter reaches only those trailers, tents, or self-propelled vehicles that are designed or adapted for the overnight

---

[5] To the extent that one might argue the recently-published Sixth Circuit decision *United States v. Ritchey*—which stated unequivocally that "breaking and entering a tent does not constitute a generic burglary," No. 15-2460, slip op. at 12 (6th Cir. October 26, 2016), forecloses any possibility that the Sixth Circuit will define generic burglary in a manner that parallels the Model Penal Code because the latter expressly covers burglary of any and all "places adapted for overnight accommodation," Model Penal Code 221.1 (1990), two considerations prevent this Court from treating *Ritchey* as a dispositive forecast of what the Sixth Circuit will do in *Stitt*. First, no Sixth Circuit panel has the power to reverse the published decision of another panel. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision."). Second, a reasonable argument can be made for reconciling *Ritchey* and the Model Penal Code definition: a statute broadly criminalizing the breaking and entering of tents would fall outside of the Model Penal Code definition because at least some tents—party tents for example—are neither adapted for the overnight accommodation of persons or the carrying on of business.

6

accommodation of persons.[6] As such, only the Tennessee statute categorically aligns with the Model Penal Code; differing scope of the provisions could provide grounds for the Sixth Circuit to conclude that the Iowa provision alone criminalizes conduct in excess of generic burglary.[7]

The fact that reasonable arguments could be made to distinguish Tennessee Code Annotated § 39-14-403(a) and Iowa Code Ann. 702.12 prevents this Court from saying with

---

[6] Tennessee Code Annotated § 39-14-403(a) provides that "[a]ggravated burglary is burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." The statute incorporates two definitions: burglary as set forth in Tennessee Code Annotated § 39-14-402; and "habitation" as set forth in Tennessee Code Annotated § 39-14-401. The latter definition includes "any structure, including buildings, module unites, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons." Tenn. Code. Ann. § 39-14-401(1)(A).

Iowa Code Annotated § 713.1 defines burglary as unlawful entry of an "occupied structure" with "intent to commit a felony, assault or theft therein." Occupied structure includes "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight business or other activity therein, or for the storage or safekeeping of anything of value." *Id.* at § 702.12.

[7] While both Tennessee Code Annotated § 39-14-403(a) and Iowa Code Annotated § 713.1 cover vehicles and structures, it is the latter's inclusion of vehicles not adapted for the overnight accommodation of persons or the carrying on of business that expands the Iowa provision beyond the scope of the Model Penal Code and thus arguably beyond the scope of generic burglary. *See Mathis*, 136 S. Ct. at 2250 (noting that the Iowa provision covered *all* land, water, or air vehicles (emphasis added)); *Taylor*, 495 U.S. at 578 n.1 (noting that Missouri's second-degree burglary statute reached "more broadly" than generic burglary because it criminalized the breaking and entering into *any* booth, tent, boat, vessel, or railroad car" (emphasis added)).

To the extent Petitioner points to *United States v. Prater*, 766 F.3d 501 (6th Cir. 2014), as proof that the Sixth Circuit has interpreted *Taylor*'s definition of generic burglary to exclude "vehicle[s] or watercraft used for overnight lodging of persons" [Doc. 60 p. 13], that cases is distinguishable as well. Unlike the statute at issue in the instant case, the New York third-degree burglary statute at issue in *Prater* defined "building" to include "any structure, vehicle, or watercraft. . . used as an elementary or secondary school," motor trucks, and motor truck trailers. 766 F.3d at 509. Further, it was the absence of "*Shepard* evidence," i.e., charging documents indicating which variant supported Petitioner's conviction—not the incompatibility of each and every variant therein with *Taylor*'s definition of generic burglary—that forced the Sixth Circuit to resort to the residual clause and eventually remand the case to the district court for further investigation. *Id.* at 512–16, 519.

7

sufficient conviction that the Sixth Circuit will read *Mathis* as reversing *Nance* or *Priddy*. While this Court lacks sufficient evidence to conclude *ad initio* that the Sixth Circuit will reverse its prior holdings, it agrees that such a reversal remains a possibility; a stay is appropriate.

For the reasons outlined above, the United States's request for a stay [Doc. 23] is **GRANTED** and the action [E.D. Tenn. Case No. 3:14-CV-273-TAV] is **STAYED** pending issuance of the Sixth Circuit's *en banc* decision in *Stitt*. The parties are **DIRECTED** to file a joint status report within thirty (30) days of that decision.

**IT IS SO ORDERED.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE